UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────────────

GENE M. BARTSCH, PHYLLIS BARTSCH,

        Plaintiffs,

                                   Case No. 0:21-cv-_____

v.

GENERAL DYNAMICS CORPORATION,
GENERAL DYNAMICS SALARIED                  **COMPLAINT**
RETIREMENT PLAN; GENERAL
DYNAMICS CORPORATION
RETIREMENT PLAN; ALIGHT
SOLUTIONS (FORMERLY KNOWN AS
HEWITT ASSOCIATES LLC),

        Defendants.

───────────────────────────────────────

## I.
## INTRODUCTION

1.      This is principally an action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, in which Plaintiffs Gene Bartsch and Phyllis Bartsch, contest a determination that Mr. Bartsch received benefits in excess of those called for by his retirement plan and that the plan may recoup those overpayments by reducing his future benefits to recover the overpayments over his expected lifetime and to also lower the benefit to the recalculated amount. It is also an action seeking relief for various violations of ERISA's fiduciary rules on the part of defendant General Dynamics, including depriving plaintiff and his spouse of the opportunity to make a mandatory benefit

1

election, making material misrepresentations during the benefit election period, failing to consider the equities of recoupment from the plaintiff in comparison to recovering any plan losses from the plan sponsor (General Dynamics) or the plan actuary/record-keeper Alight (formerly Hewitt Associates LLC).   The action also seeks relief against Alight for violations of ERISA and alternatively under state law for professional negligence.

2.  The case is rooted in the following basic facts:  In 2009, plaintiff, Gene Bartsch, a participant in the General Dynamics Corporation Retirement Plan, decided to consider retiring at age 61, after 30 years of continuous service.  He notified General Dynamics of his planned retirement date and General Dynamics sent him statutorily required information about his pension.  The information provided to him showed his basic pension amount and the various optional benefit forms he could elect.  Certain options, including the option selected by Mr. Bartsch, required that his wife consent to the election and that her consent be witnessed by a notary. Mr. Bartsch, with  the consent of his spouse, elected the benefit option that General Dynamics informed him (in accordance with the requirements of ERISA) was the most valuable benefit option, being valued at a substantially higher percentage than the the a 50% Contingent Annuity and other plan benefit options.  Mr. Bartsch's benefits commenced on September 1, 2009, and starting on his 62nd birthday he was receiving a benefit of $2,194.65 a month (prior to reaching age 62, he began receiving a somewhat larger benefit, pursuant to the selected benefit form).  On June 13, 2019, the plan wrote to Mr. Bartsch and claimed that it had miscalculated

the benefit and that the post-62 benefit would now be reduced to $1,912.10, effective with his July check.   The plan also indicated that Mr. Bartsch would be required to repay the plan for the $33,340.99 overpayment amount he had received before the Plan discovered its "miscalculation."  In a letter sent the day after Christmas in 2019, the plan told Mr. Bartsch that he needed to send the Plan a check for $33,340.90 within two months or it would further reduce his lifetime benefit to $1,559.42.  The plan is currently paying Mr. Bartsch this figure, which is a reduction of 29% from the benefit that General Dynamics had told him he would receive for the rest of his life and which he in fact received until General Dynamics sent him the September 2019 letter.

## II.
## JURISDICTION AND VENUE

3.  **Subject Matter Jurisdiction.**  This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 502(e)(1), 29 U.S.C. 1132(e)(1).  Subject matter jurisdiction over Plaintiff's state law claims exist under 28 U.S.C. § 1332, the matter in controversy being between citizens of different states and the amount at issue being in excess of $75,000, as well as 28 U.S.C. § 1367.

4.  **Personal Jurisdiction:**  ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. 1132(3)(2).  All of the defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

5. **Venue.** Venue is proper in this district both because much of the conduct that is the subject of this lawsuit occurred within this district and also because a defendant can be found in this district.

### III.
### THE PARTIES

**Plaintiffs**

6**.** Plaintiff Gene M. Bartsch is a retired employee of General Dynamics, who is currently receiving monthly retirement benefits from the General Dynamics Salaried Retirement Plan.   Plaintiff is a citizen of the state of Minnesota.

7.  Plaintiff Phyllis Bartsch is Gene's spouse.  General Dynamics required her to provide a notarized consent to Gene's benefit election.  Phyllis will receive a spousal survivor benefit if she survives Gene.  Although General Dynamics in 2009 informed her that her survivor benefit would be a monthly annuity of $2,194.65, General Dynamics has informed her husband that the monthly survivor benefit will be reduced to $1,912.10.  Plaintiff is a citizen of the state of Minnesota.

**Defendants**

8.  Defendant General Dynamics Salaried Retirement Plan, which appears to be a component retirement plan of Defendant General Dynamics Corporation Retirement Plan, or General Dynamics Retirement Plan (Government) is a retirement plan or plans sponsored by General Dynamics Corporation for its salaried employees.  Gene Bartsch participated in the plan while an employee of

General Dynamics and is now receiving an annuity benefit from it.  (The plan or plans shall sometimes be referred to in this Complaint as the "Plan.")

9.  Defendant General Dynamics Corporation Retirement Plan (and/or General Dynamics Corporation Retirement Plan (Government) is a retirement plan sponsored by General Dynamics Corporation for its employees.  (See Paragraph 8. above.)

10.  Defendant General Dynamics Corporation is a Delaware Corporation with a principal place of business at 11011 Sunset Hills Road, Reston, Virginia.  (General Dynamics Corporation will sometimes be referred to in this complaint as "General Dynamics."  General Dynamics is the sponsor of the Plan.  The Plan also identifies General Dynamics Corporation as the Plan Administrator and its Name Fiduciary.

11.  Defendant Alight is an Illinois limited liability company with its principal place of business in Illinois.  On information and belief, at the time that Gene Bartsch began considering retirement and when he filed his retirement benefits, Alight's predecessor, Hewitt Associates LLC provided various recordkeeping and actuarial services to the plan.  On information and belief, Hewitt Associates prepared the benefit amount information for each payment option offered to Mr. Bartsch and prepared the required Relative Value Notice, which showed that the benefit selected by Mr. and Mrs. Bartsch was the most valuable benefit option under the plan.  That benefit statement indicated that the benefit option selected by Mr. and Mrs. Bartsch had a value substantially in excess of the next most valuable

benefit under the plan. (This Complaint refers to the defendant Alight as Alight, Hewitt/Alight, or Hewitt, as appropriate to the context.)

## IV.
## FACTS

12. Mr. Bartsch began working for a division of Control Data Corporation in October 1969. Defendant General Dynamics acquired Mr. Bartsch's division sometime in 1997, at which point he became an employee of General Dynamics. Mr. Bartsch worked uninterruptedly until he retired on August 31, 2009. Throughout this almost 30-year period of continuous employment, Mr. Bartsch was a participant in a pension plan, initially sponsored by Control Data. On information and belief, the Control Data pension plan, or that part of it that covered Mr. Bartsch and the other employees acquired by General Dynamics, became part of the General Dynamics Retirement Plan. From that point forward, Mr. Bartsch was a participant in the Plan.

13. In 2008 or 2009, Mr. Bartsch learned from recent retirees and other older employees that an employee who retired before 62 could elect a valuable form of retirement benefit, the "100% Contingent Annuity with Leveling at Age 62." This benefit had greater value than other benefits. Although Mr. Bartsch was not at that point planning to retire at age 62, he was encouraged by fellow employees to consider retiring to qualify for this benefit.

14. Mr. Bartsch requested a summary of his benefit options from the Plan. The Plan provided him a summary of the options, which for each benefit payment

option specified the monthly benefit he would receive during his lifetime and the

survivor benefit.  He also received, as required by Treasury Regulations, a Relative

Values Notice, which compared the relative value of benefits options.  The Notice

stated that "The relative value of the 100% Contingent Annuity Level Income

Option to Age 62" had a value that was substantially more valuable than other

"full" benefits, which were all of approximately equal value.

15.  Mr. and Mrs. Bartsch discussed the issue of whether Mr. Bartsch should retire.

Ultimately they decided that they could afford to do so rather than having Mr.

Bartsch continue to work beyond his 62nd birthday, as had been their original

expectation.  They relied on the accuracy of the benefit statement and Relative

Value Notice in deciding whether Mr. Bartsch should retire.  As a result, Mr.

Bartsch chose to retire, and he submitted the election form selecting the "100%

Contingent Annuity Level Income Option to Age 62".

16.  Mrs. Bartsch was required to consent to this benefit election before a notary,

which she did.

17.  The plan began paying benefits.  When Mr. Bartsch attained age 62, the benefit

was properly reduced from $3,454.65 to $2,194.65.  Under the terms of the benefit

election form, the plan would continue to pay $2,194.65 during the joint lives of

Mr. and Mrs. Bartsch.

18.  On June 13, 2019, a decade after he retired, the Plan sent Mr. Bartsch a one-

page letter that said "During a recent review of your benefit payments, it was

determined that your final benefit was overstated.  This overstatement occurred

because of an error in the calculation of the amount payable under the 100%
Contingent Annuity Level Income Option to age 62 that you chose for the GDIS
Legacy Total benefit source at the time of your retirement."  The letter indicated
that his benefit would be reduced as of July 1, 2019, to $1,819.69.  The letter also
indicated that because of the plan's failure to correct the error for ten years, Mr.
Bartsch was overpaid by $33,340.90 and that the plan would send him a second
letter with additional details regarding options for repaying the overpaid amount.
The letter also told Mr. Bartsch that "We apologize for any inconvenience caused
by this change to your benefit."

19.  On December 19, 2019, the Plan wrote Mr. Bartsch again.  The Plan told Mr.
Bartsch that he had two choices: he could send the plan a "certified check, money
order or personal check, in the amount of $33,340.90 by February 23, 2020," or it
would permanently reduce his pension to $1,559.42 for the rest of his life.  The
Plan has now reduced Mr. Bartsch's benefit to that level.

20.  Mr. Bartsch appealed the Plan's decision to reduce his benefit and to collect
reimbursement on February 26, 2020.  His appeal claimed that the plan failed to
provide adequate detail on the plan's original 2009 benefit calculation and that the
plan should be estopped from reducing the plan benefits because the error, if any,
was the fault of the Plan and that the Plan should recover the overpayments from
either General Dynamics (by continuing to fund the plan at current levels) or the
plan's actuary/record-keeper who made the error.  The appeal also indicated that
Mr. Bartsch was now forced to use his savings to pay his mortgage and other

8

necessary expenses.  The Plan granted itself a 90-day extension to respond to the appeal because it felt it needed more time and then rejected the appeal on October 19, 2020, taking more than six months to complete its process.   (We note this because the Plan requires Mr. Bartsch to file a civil action within six months of its denial of Mr. Bartsch's claim, providing him less time for finding a lawyer knowledgeable about ERISA and for the lawyer to then review and prepare a case and file a complaint in less time than it took the Plan to reject the appeal.)

21.  In rejecting the appeal, the Plan wrote that "the Plan "authorizes and requires the Administrator to adjust Mr. Bartsch's benefit" and rejected without any discussion Mr. Bartsch's argument that the Plan should be estopped from reducing his benefits.  The Plan indicated that Mr. Bartsch had no right to rely on his expectation that the Plan correctly calculated his benefit: "Your appeal states that Mr. Bartsch would be harmed by repaying the overpayment through an offset to his future payments.  . . .The Administrator understands and appreciates that the pension reduction represents a change to Mr. and Mrs. Bartsch's expectations. However, a change in expectation does not itself represent a financial hardship."

22.  Neither did the Plan indicate why it had not sought to recover its "loss" from the record-keeper/actuary who made the error or from General Dynamics, as Plan Administrator and Named Fiduciary, which, among other failures, apparently failed to conduct an adequate audit of the Plan for a decade or more (there are indications that the miscalculation had been a part of the Plan's benefit structure for at least several years before Mr. Bartsch retired).

9

22.  The Plan informed Mr. Bartsch that if he wished to contest the Plan's decision, he must do so within six months of the plan's denial.  The Plan did not include this limitations period at any point during Mr. Bartsch's employment or at the time of his retirement.

23.  Mr. Bartsch received no consideration (or even notice) for this change in the time he had to file a complaint.

## V.
## FIRST CLAIM FOR RELIEF
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

24.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 23 above as if fully set forth herein.

25.  Plaintiffs have used Mr. Bartsch's pension benefits for living expenses and therefore no longer have them—they are no longer in their possession or control.

26.  Plaintiffs have been forced to accept a reduced benefit for the remainder of their lives.  While this will not leave Plaintiffs destitute, it will be result in a lower standard of living and be a hardship to them.

27.  Plaintiffs have paid taxes on all of the plan payments.  Because his income will be lower and Plaintiff's marginal tax rate is now lower than during the period of the alleged overpayments, Plaintiffs will pay more income tax than they would have over his life and additionally will lose the time value of the taxes paid prematurely. Plaintiffs are being asked to repay the full amount of this repayment.

28. Mr. Bartsch, but for the Plan's miscalculation, would not have retired and thus would have earned additional pay and accrued additional retirement benefits.

29.  Plaintiffs furnished an incorrect Relative Value Notice, the sole purpose of which is to allow plaintiffs to know which benefit options are the most valuable to help guide their decision-making.  Plaintiffs relied on that Notice in selecting the 100% Contingent Annuity Level Income Option to Age 62.

30.  Defendants are equitably and promissorily estopped from refusing to pay Plaintiffs' benefits in the amount of $2,194.65 per month for their joint lives.

## SECOND CLAIM FOR RELIEF
### (ERISA § 502(A)(1)(B) AND (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3))

31.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 30 above as if fully set forth herein.

32.  ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), titled "Assignment or alienation of plan benefits," provides that "Each pension plan shall provide that benefits provided under the plan not be assigned or alienated."

33.  Defendant's recoupment of the alleged overpayment violates that section.

34.  To the extent that Defendants rely on 26 C.F.R. § 1.401-13(c)(2)(iii) to countenance the recoupment, it is Plaintiffs position that the regulation is inapplicable or, if applicable, is *ultra vires.*

35.  To the extent the Defendants rely on any provision of the Plan to countenance recoupment, any such provision is either inapplicable or violates ERISA § 206(d)(1).

36.  Even if the Plan is permitted to recoup overpayments, it must pursue recoupment through litigation rather than via self-help.

37.  Plaintiffs are entitled to a pension benefit calculated in accordance with the Plan's terms, without offset for past overpayments.  (The Plan's recourse would be to seek judicial relief, not self-help.)  Plaintiffs are entitled to be repaid any amounts already deducted by the Plan to recover alleged overpayments, with appropriate interest, as well as payment of his correct benefit prospectively.

### THIRD CLAIM FOR RELIEF
### (ERISA § 502(a)(2), 29 U.S.C, § 1132(a)(2)

38.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 37 above as if fully set forth herein.

39.  The Plan's provisions set forth how a participant's benefits are to be calculated.

40.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), require that fiduciaries act "in accordance with the documents and instruments governing the plan" except to the extent such documents are inconsistent with the statute.

41.  General Dynamics Corporation is the Plan Administrator, with the responsibility to compute, certify and direct the Trustee with respect to the amount and the kind of benefit to which a participant is entitled.

42.  To the extent Plaintiffs has been overpaid, General Dynamics has breached its fiduciary duty to pay them the amount of benefits to which they were entitled under the Plan.

42.  General Dynamics is liable to reimburse the Plan for the full amount of any overpayment to Plaintiff with appropriate interest.

## FOURTH CLAIM FOR RELIEF
### (ERISA § 408(b)(ii), 29 U.S.C. § 1106(b)(1)

43.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 42 above as if fully set forth herein.

44.  General Dynamics, as Plan Administrator, had three options for the plan to recover any losses because of General Dynamics failure to pay the "100% Contingent Annuity Level Income Option to Age 62" at its correct level and for failing to discover the error for at least a decade: it could make the plan whole by continuing to fund the benefit as originally calculated; it could sue the record-keeper/actuary for the miscalculation; or it could seek recoupment from the innocent participants who relied on the misrepresentations to their detriment. General Dynamics, as Plan Administrator and the Plan's Named Fiduciary, was required to make this determination subject to ERISA's fiduciary duties and the restraints of ERISA's prohibited transaction provisions.

45.  General Dynamics chose to recover the plan's loss from the innocent Plaintiffs rather than simply continuing to fund the plan to continue to pay benefits at the level promised to Plaintiffs.  In doing so, General Dynamics not only failed to administer the plan solely in the interests of participants, but acted in General Dynamic's corporate interest, which was adverse to the interests of the plan and the interests of its participants.  This constituted a prohibited transaction under ERISA § 408(b)(ii), 29 U.S.C. § 1106(b)(1).

46. General Dynamics must continue funding the plan to pay the plan benefits as described to Participants on their pension calculation statement and in accordance with the relative value of the "100% Contingent Annuity Level Income Option to Age 62" reported to Plaintiffs on the Relative Value Notice.

## FIFTH CLAIM FOR RELIEF
### (ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B))

47. Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 46 above as if fully set forth herein.

48. The Plan document should under the circumstances should either include the Relative Value Notice, which informed Plaintiffs that the 100% Contingent Annuity Level Income Option to Age 62" was substantially more valuable than of the value of other benefit options, or the Plan should be interpreted in accordance with the Relative Value Notice.

49. Accordingly, Plaintiffs benefit should be restored to $2,194.65 per month for the remainder of their joint lives.

## SIXTH CLAIM FOR RELIEF
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

50. Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 50 above as if fully set forth herein.

51. Defendants, through the preparation and provision to Plaintiffs of the Relative Value Notice and the Pension Calculation Statement made false and materially misleading representations of the benefits to which Plaintiffs were entitled, on which Plaintiffs justifiably relied. These statements should have been prepared and

reviewed with the utmost regard for accuracy, since Defendants should have expected that Plaintiffs would rely on these representations of the amount and relative value of the different benefit options.

52.  Plaintiffs are entitled to plan reformation to conform the plan to the misrepresentations made to them by Defendants, and surcharge and other equitable relief.

### SEVENTH CLAIM FOR RELIEF
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

53.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 52 above as if fully set forth herein.

54.  Defendants Plan and the General Dynamics Corporation as Plan Administrator were required to provide a Relative Value Notice and a benefit election calculation statement that were not materially misleading.  Because the statements were inaccurate as to only one of the benefit options, and because the Relative Value Notice claimed that this benefit option was more valuable than the other available forms of benefits, Mr. Bartsch was deprived of the opportunity to make an informed selection of the form of benefit under the Plan and Mrs. Bartsch was denied her opportunity to consent to the form of benefit.  The election made in 2009 should be voided.

55.  Defendant Plan has failed to provide Plaintiffs with the opportunity to make an informed selection of a benefit form and must now offer them the opportunity, with

accurate information.  Plaintiffs should be paid such benefit as they select, plus

interest on such benefit from the time of their defective election in 2009.

56.  General Dynamics, by denying Plaintiffs the opportunity to make an informed

election of a benefit form in 2009, breached its fiduciary obligations to Plaintiffs

and should be liable to them for surcharge and other equitable remedies.

### EIGHTH CLAIM FOR RELIEF
### (ERISA § 502(a)(3), 29 U.S.C. § 1132 (a)(3))

57.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 56

above as if fully set forth herein.

58.  If Plaintiffs were overpaid and are required to reimburse the plan for all or any

part of that overpayment, any such overpayment was caused by the General

Dynamics breaches of fiduciary duty, including paying amounts from plan assets in

excess of the benefits payable under the Plan, and the preparation and transmission

of misleading and inaccurate disclosures and forms provided to Plaintiffs about the

amount and relative value of those benefits.

59.  Plaintiffs are entitled to judgment surcharging General Dynamics in the full

amount that Plaintiff has been and may in the future be required to repay.

### NINTH CLAIM FOR RELIEF
### (ERISA § 502(a)(3), 29 U.S.C. § 1132 (a)(3))

57.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 59

above as if fully set forth herein.

58.  Plaintiffs relied on the inaccurate pension calculation statement and Relative

Value Notices provided to them by General Dynamics.  As described above, the

preparation and provision of these inaccurate statements were a breach of various of General Dynamic's fiduciary duties.

59.  Plaintiff Gene Bartsch justifiably relied on these false material misrepresentations in deciding to retire in 2009.

60.  Had he not chosen to retire, Mr. Bartsch would have received salary and additional pension accruals, and would not have paid an effective federal tax penalty.

61.  Plaintiff is entitled to judgment surcharging General Dynamics for the damages he incurred for deciding to retire in 2009 on account of General Dynamics' fiduciary breaches.

## TENTH CLAIM FOR RELIEF
### (ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132 (a)(2) and (3))

62.  Plaintiffs repeats and realleges the matters set forth in Paragraphs 1 through 61 above as if fully set forth herein.

63.  Upon information and belief, General Dynamics contracted for the services which Hewitt (now Alight) provided to the plan including benefit calculations and the preparation of the Relative Value Notice.

64.  Hewitt's repeated negligent acts are the cause of any overpayments to Plaintiffs as well as for Plaintiff's inability to ascertain correct information as to the amount of their benefits.  Therefore Hewitt, not Plaintiff, is liable to reimburse the Plan for any overpayments.

17

65.  Upon information and belief, General Dynamics is in breach of its fiduciary duties by failing to sue Hewitt to recover any overpayments.

## ELEVENTH CLAIM FOR RELIEF
### (ERISA § 502(a)(3), 29 U.S.C. § 1132 (a)(3))

66.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 65 above as if fully set forth herein.

67.  When Hewitt prepared the benefit calculations, benefit calculations statement, and Relative Value Statement, without review or at least meaningful review from General Dynamics, Hewitt was exercising authority and control with respect to management or disposition of plan assets and was thus a fiduciary under ERISA § 1(21), 29 U.S.C. § 1002(21).

68.  Hewitt's miscalculations were grossly negligent and violated its duty to act prudently under ERISA § 404(a), 29 U.S.C. § 1104(a).

69.  Plaintiff is entitled to judgment surcharging Hewitt for its various violations of ERISA's duty of prudence.

## TWELFTH CLAIM FOR RELIEF
### (ERISA § 502(a)(2), 29 U.S.C. § 1132 (a)(2))

70.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 69 above as if fully set forth herein.

71.  When Hewitt/Alight prepared the benefit calculations, benefit calculations statement, and Relative Value Statement, without review or at least meaningful review from General Dynamics, Hewitt was exercising authority and control with

respect to management or disposition of plan assets and was thus a fiduciary under ERISA § 1(21), 29 U.S.C. § 1002(21).

72.  Hewitt/Alight is liable to restore the Plan the losses it suffered because of Hewitt's fiduciary breaches.  Plaintiffs are also entitled to appropriate equitable relief against Hewitt/Alight.

## THIRTEENTH CLAIM FOR RELIEF
## (COMMON LAW NEGLIGENCE)

73.  Plaintiffs repeat and reallege the matters set forth in Paragraphs 1 through 72 above as if fully set forth herein.

74. Upon information and belief, at all times pertinent hereto, Plaintiff's pension benefits had been calculated by Hewitt.

75.  If Plaintiffs pension benefits have been overpaid, any such overpayments would have been the result of, inter alia, Hewitt's negligence.

76.  If Plaintiff's benefits have been overpaid, any damage to the Plan caused by such overpayments should be paid by Hewitt/Alight.

77.  In addition, Hewitt's negligence caused Plaintiffs additional damages, including being deprived of the full benefits that Hewitt caused Plaintiffs to expect to support them in retirement, causing Plaintiff Gene Bartsch to choose to retire early, and causing Plaintiffs to incur an effective tax penalty.

78.  Plaintiffs pursue this claim derivatively on behalf of the plan and on their own behalf.

79. Plaintiffs (and the Plan) are entitled to appropriate legal and equitable relief from Hewitt/Alight for their losses, including, if appropriate, punitive damages.

### PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

1. Granting Plaintiffs pension benefits in the amount of $2,194.65 a month for their joint lives and retroactive payment, with interest, for benefits withheld beginning on July 1, 2019, and ordering either the Plan or the fiduciary defendants, jointly and severally, to pay those benefits;

2. Ordering the fiduciary defendants either: (1) to reimburse the Plan in such sum as will provide, on actuarial basis, an amount necessary to fund any benefit payments to Plaintiff in excess of those permitted by the Plan's benefit formula; or (2) to reimburse the Plan in such sum as will provide, on an actuarial basis, an amount necessary to fund the difference between benefit payments to Plaintiffs in the amount provided by the Plan's formula and the amount which Plaintiff would be paid if recoupment were permitted;

3. Enjoining Defendants from paying Plaintiffs pension benefits in any amount less than the benefits to which they are entitled;

4. Ordering surcharge against General Dynamics and Alight for the losses their respective fiduciary breaches caused to Plaintiffs and/or the Plan;

5. Ordering Alight to pay appropriate damages for any state law violations;

6. Granting Plaintiffs' their costs and attorney's fees , including any expert or consultant expenses; and

7. Granting such other and further relief as to this Court may seem just and proper.

Respectfully submitted,

Date: April 14, 2021

s/ Amy R. Mason
Amy R. Mason, Esq. (#0347760)
MILLER & STEVENS, P.A.
92 Lake Street S.
Forest Lake, MN 55025
(651) 462-0206
amy@millerstevens.com

Norman Stein
District of Columbia Bar #: 256701
7709 Corliss Avenue North
Seattle, WA 98103
(205) 410-0989
nps32@drexel.edu